## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RONA FOOTE LAPRADE,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>RONALD M. ABRAMSON <u>et al.</u>,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 97-10 (RWR)

### MEMORANDUM OPINION

Plaintiff Rona Foote LaPrade has brought claims against May Department Stores Company ("May Co.") for defamation and for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1637(a)(7), 1666(a), 1666a(a) (2000), and against the law firm Wolpoff & Abramson ("Wolpoff firm") and one of its members, Ronald M. Abramson, for violation of the TILA and for using unfair means to attempt to collect a debt in violation of D.C. Code § 28-3814(g)(5).

LaPrade has filed three motions.  First, LaPrade has moved for leave to file a fourth amended complaint.  Because LaPrade's motion was unduly delayed and she failed to cure the deficiencies in her complaint in amendments previously allowed, and because granting LaPrade's motion would prejudice Abramson and the Wolpoff firm, LaPrade's motion has been denied.  Second, LaPrade has moved to reinstate Count Sixteen of her first amended complaint -- a claim of defamation against Abramson and the

-2-

Wolpoff firm.  Because Laprade's motion in part rehashes legal arguments already rejected and in part impermissibly attempts to bring an old claim under a new legal theory, her motion has been denied.  Third, LaPrade has filed a motion styled as a motion for partial summary judgment, seeking a ruling on the issue of whether she owed a valid debt to May Co.  Because May Co. has demonstrated that a genuine issue of material fact exists as to the existence of a valid debt, LaPrade is entitled to no relief under Rule 56 of the Federal Rules of Civil Procedure.

May Co. has filed a motion for summary judgment as to Counts I, II, III, IV, V and VIII of LaPrade's third amended complaint. Because May Co. did not extend to LaPrade an "open end credit plan" within the meaning of the TILA, there is no genuine issue of fact material to a claim under 15 U.S.C. § 1637(a)(7), and May Co.'s motion has been granted as to Count I.  Because 15 U.S.C. § 1666(a) offers protection only to a consumer who has been extended consumer credit, and LaPrade was not extended consumer credit by May Co., May Co.'s motion has been granted as to Counts II, III, and IV.  Because 15 U.S.C. § 1666a(a) offers protection only to a consumer entitled to invoke the protections of § 1666(a) and LaPrade is not entitled to invoke the protections of § 1666(a), May Co.'s motion has been granted as to Count V. Finally, May Co.'s motion has been denied as to Count VIII because if May Co. acted with malice or willful intent to injure

-3-

LaPrade -- a material fact in genuine dispute -- then LaPrade's claim is not barred by 15 U.S.C. § 1681h(e).

## BACKGROUND

LaPrade maintained a credit card account with the department store Woodward and Lothrop ("Woodies").  It is not clear when she opened her account, but the account was in existence by late 1989.  LaPrade asserts that her Woodies account was paid in full as of October 1990.  LaPrade contends that when Woodies ceased doing business in 1994, her Woodies account ceased to exist.  May Co., which purchased Woodies' accounts receivable in 1995, counters that four documents from Woodies (the "Woodies documents") indicate that LaPrade owed $371.67 and that the account was in Woodies' collections department.  May Co. relies on the Woodies documents and two affidavits submitted on its behalf -- one by Richard Russell, former Recoveries and Bankruptcy Manager for Woodies (see May Co.'s Mot. Summ. J., Russell Aff. ¶ 3, Dec. 12, 1997), and another by Richard J. Jansing, regional vice-president of Credit Support for May Co. (See May Co.'s Mot. Summ. J., Jansing Aff. ¶ 2, Dec. 11, 1997.) Two "internal document[s] from Woodies" indicate that as of December 15, 1989 and December 15, 1990, the LaPrade account was in Woodies' collections department and had been assigned to a collection agency.  (Russell Aff. ¶¶ 4, 6.)  The documents show that in November 1989 and again in December 1990, a purchase

-4-

charge was processed for LaPrade through Woodies Distribution Center, the Woodies warehouse.  The charges totaled $371.67.  The Woodies Distribution Center did not have a connection to the Woodies Credit Center, so the Distribution Center would not have been aware that the account was delinquent.  In each instance, as soon as the charge was sent to the Credit Center, it was placed in Woodies' collections department.  (Id. ¶¶ 5, 7.)  May Co. claims that on November 27, 1991, Woodies removed the balance due from its collections department and placed it on LaPrade's account.  (Id. ¶ 8.)  Yet, LaPrade cites a letter from Woodies' Credit Division stating that LaPrade's account was paid in full as of November 1991.  May Co. also claims that on January 9, 1992, the delinquent amount was removed from LaPrade's account and reassigned to Woodies' collections department as "uncollectable."  (Id. ¶ 9-10.)  LaPrade, though, cites a facsimile of a note dated January 9, 1992 from Woodies' Corporate Credit Department stating that LaPrade's account had a zero balance and that all derogatory information connected to that account was being purged.

In January 1996, Woodies' collections accounts receivable were transferred to May Co.  (Jansing Aff. ¶ 16.)  Each such account was assigned an internal May Co. number for administering the account during the collection process.  (Id. ¶ 13.)  Customers were not billed for these accounts.  Customers with

-5-

these accounts did not have the ability to use the new May Co. number to make purchases. (Id.)  May Co. asserts that no new accounts were opened in this process. (Id. ¶ 15.)  LaPrade, though, alleges that May Co. intentionally opened a new open end credit plan in her name without her consent and then in March 1996, placed a false charge of $371.67 on that account.

LaPrade's old Woodies account with its new May Co. number was placed in May Co.'s accounts receivable computer database system in January 1996 or soon thereafter and it was removed from that system by September of the same year. (Id. ¶¶ 16, 22.)  May Co. made reports to credit bureaus on a monthly basis based on its computer account receivables database. (Id. ¶ 21.)  May Co. reported LaPrade's account as delinquent.  LaPrade claims that as a direct result of May Co.'s reports to credit bureaus, she lost a credit line of more than $4,000 and was unable to refinance existing debts at a lower rate.

After receiving the Woodies collections accounts receivable and assigning them new numbers, May Co. submitted them to outside collections agencies. (Id. ¶ 18.)  LaPrade's account was assigned to the Wolpoff law firm for collection. (Id. ¶ 19.) On April 15, 1996, the Wolpoff firm sent LaPrade a letter requesting payment in the amount of $377.17, representing the original amount owed plus $5.50 interest.  The letter stated:

> Please be advised that your above account has been
> referred to our office for audit and review.  After you

have read the important notice on the reverse side of
this letter, if appropriate please call our office to
arrange for payment.  If the balance indicated above
[$377.17] is incorrect, please contact us as soon as
possible so that we may adjust our records accordingly.

(Compl. Ex. 1.)  The "important notice" on the back of the letter

stated, in part, that "this is an attempt to collect a debt and

any information obtained will be used for that purpose."  (Id.)

LaPrade characterizes this letter as a "collection letter."

Abramson and the Wolpoff firm deny that characterization.  May

Co. does not characterize the letter, but notes that the

reference to debt collection appeared not in the text of the

letter but only on the back of the letter in the standard

disclosures required by the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§ 1692 et seq., part of the TILA.

In late August and early September 1996, LaPrade's attorney,

Steven Teppler, directly telephoned and sent facsimiles to May

Co. regarding the alleged debt, conduct that Abramson and the

Wolpoff firm viewed as a violation of Rule 4.2 of the D.C. Bar's

Rules of Professional Conduct governing attorneys.  In September

1996, May Co. removed LaPrade's alleged debt from its database

because one of its employees, Elizabeth Bess, decided not to

pursue collection because of the small amount of money involved

compared to the effort it would take to locate supporting

documentation.

-7-

LaPrade filed her first complaint in January 1997 against Abramson and the Wolpoff firm and a month later amended it to add May Co. as a defendant.  She served discovery requests in March 1997 seeking documentation of the alleged debt, to which May Co. responded in April 1997 by producing the Woodies documents.  The April 9, 1997 scheduling order allowed all parties 90 days -- until July 9, 1997 -- to file any amendments to pleadings.

On April 28, 1997, the Legal Times published an article about a bar complaint against Teppler alleging a violation of Rule 4.2 of the D.C. Rules of Professional Conduct.  The article noted that LaPrade's account had been referred to the Wolpoff firm for collection and that Teppler had been successful in clearing LaPrade's credit rating.  LaPrade argues that the article portrayed her as a delinquent debtor and that the information was provided by and through defendants.  Defendants deny conveying any information to the Legal Times.  Further, May Co. argues that the article portrayed LaPrade in a positive light because it reported that the disputed account information had been removed.

Many of LaPrade's claims, including Count Sixteen against Abramson and the Wolpoff firm for defamation under D.C. Code 28-3814, were dismissed by order dated June 27, 1997.  In July and September 1997, LaPrade filed her second and third amended complaints.  LaPrade has now moved for leave to file a fourth

-8-

amended complaint, to reinstate Count Sixteen, and for partial

summary judgment, and May Co. has moved for summary judgment on

all claims pending against it.

DISCUSSION

I.   MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

LaPrade seeks leave to file a fourth amended complaint.

Motions to amend are governed by Rule 15(a), which provides that

> [a] party may amend the party's pleading once as a
> matter of course at any time before a responsive
> pleading is served . . . .  Otherwise, a party may
> amend the party's pleading only by leave of the court
> or by written consent of the adverse party; and leave
> shall be freely granted when justice so requires.

Fed. R. Civ. P. 15(a).  Because defendants have filed answers,

LaPrade's motion to amend requires leave of court.  While the

term "freely" in Rule 15(a) does not mean "automatically," Foman

v. Davis, 371 U.S. 178, 182 (1962), defendants bear the burden of

demonstrating why leave should not be granted.  See 3 James Wm.

Moore et al., Moore's Fed. Prac. § 15.15[3] (3d ed. 1999) (noting

that the party opposing amendment bears the burden of producing

reasons or evidence to deny leave to amend).  Factors that might

lead a court properly to deny leave to amend include, among other

things, a plaintiff's "undue delay, bad faith or dilatory motive

. . . , repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party . . . ,

futility of the amendment, etc."  Foman, 371 U.S. at 182; see

also Atchinson v. District of Columbia, 73 F.2d 418, 425 (D.C.

-9-

Cir. 1996) (citing the Foman factors); Williamsburg Wax Museum v. Historic Figures, Inc., 810 F.2d 243, 247 (D.C. Cir. 1987); cf. Harrison v. Rubin, 174 F.3d 249, 253 (D.C. Cir. 1999) (deciding that where a plaintiff does not seek to allege new facts, but only to "do no more than clarify legal theories or make technical corrections," amendment should be denied for undue delay only if defendant would be prejudiced by amendment).

A.   Undue delay

A motion to amend may be denied as dilatory or unduly delayed where a plaintiff was aware of the facts giving rise to the cause of action before filing the complaint that she now wishes to amend.  Yager v. Carey, 910 F. Supp. 704, 731-32 (D.D.C. 1995) (denying leave to amend because plaintiff had not been unaware of the cause of action at the time the original complaint was filed).  Defendants argue that LaPrade's motion for leave to amend her complaint is unduly delayed and filed in bad faith.[1]  They note that the basis for the proposed claims -- the legal theory that no debt existed -- was alleged in LaPrade's first amended complaint, that she had material facts by at least April 1997 in the form of the Woodies documents regarding the existence of the debt, and that her motion was filed beyond the

---

[1]   The animosity between the parties is evident from their filings, but defendants have not presented evidence that LaPrade's motion was filed in bad faith.

-10-

90 days for amendments allowed by the April 9, 1997 scheduling
order.

LaPrade responds that she had not previously asserted her
proposed claims under the FDCPA because she was relying on May
Co. to produce proof of a credit purchase giving rise to the
alleged debt, and that the Russell affidavit executed
December 12, 1997 contains new factual allegations about when the
alleged debt occurred.  She argues that justice requires leave to
amend, despite the 90-day limit imposed by the April 9, 1997
scheduling order.

Here, it is clear that LaPrade had sufficient information
available to her by July 9, 1997, the scheduling order's deadline
for amendments, to file her additional claims.  LaPrade proposes
to add a FDCPA claim under 15 U.S.C. § 1692e(2)(A), which
prohibits "false representation of the character, amount, or
legal status of any debt[.]"  LaPrade argues that since the
Wolpoff firm's April 15, 1996 letter stated that her debt was
$371.67 plus $5.50 in interest while the Woodies documents she
received in April 1999 showed it to be only $371.67, Abramson and
the Wolpoff firm made a false representation of the amount of her
debt.  The letter and documents on which LaPrade bases her
proposed claim were available to her before the amendment
deadline in July 1997.

-11-

LaPrade also proposes to add a claim under 15 U.S.C.
§ 1692e(10), which prohibits the "use of any false representation
or deceptive means to collect or attempt to collect any debt or
to obtain information concerning a consumer."  LaPrade argues
that the Wolpoff firm's April 15, 1996 letter contained a threat
of court proceedings which is impermissible under sections
1692e(10) and 1692e(5).  Similarly, LaPrade argues that this same
letter establishes a violation of D.C. Code § 28-3814(f)(5),
which prohibits a debt collector from making "any false
representation or implication of the character, extent, or amount
of a claim against a consumer, or of its status in any legal
proceeding[,]" by containing a misrepresentation of court
proceedings.  The letter on which LaPrade bases her proposed
claims was available to her before the amendment deadline in July
1997.

LaPrade also wants to add a claim under 15 U.S.C. § 1692f,
which states that a "debt collector may not use unfair or
unconscionable means to collect or attempt to collect any debt."
LaPrade argues that instituting a collection action on a debt
that appears to be time-barred is a violation of § 1692f, that
the Wolpoff firm's April 15, 1996 letter instituted a collection
action against her, and that defendants knew or should have known
that either the debt did not exist or that action on it was
barred by D.C.'s three-year statute of limitations.  LaPrade also

-12-

argues that the Russell affidavit, first available in December 1997, presented new evidence to the effect that the debt at issue accrued in May 1991.  Even assuming that the Russell affidavit presented new evidence of a debt incurred in May 1991, the Woodies documents attributed debt to LaPrade as of December 1989, December 1990, December 1991, and December 1992.  These documents, available to LaPrade before the amendment deadline in July 1997, provided LaPrade with sufficient facts on which to base a claim that to the extent that the Wolpoff firm's letter of April 15, 1996 constituted a collection action on any of the debts identified in 1989 through 1992, it was time-barred.

LaPrade's motion for leave to file a fourth amended complaint was dilatory and unduly delayed because she knew sufficient facts before the amendment deadline to make the claims she now seeks to add.  LaPrade had possession of the Woodies documents in April 1997.  Even if the Russell affidavit presented new evidence as to when the debt arose, LaPrade certainly knew before July 1997 that defendants asserted that a debt had arisen as early as December 1989.

B.   Failure to cure deficiencies

"Denial of leave to amend is appropriate where a party has had sufficient opportunity to state a claim but has failed to do so."  Mittleman v. United States, 997 F. Supp. 1, 10 (D.D.C. 1998) (citing Williamsburg Wax Museum, 810 F.2d at 247) (denying

-13-

leave to amend and finding that even if new facts had surfaced,
plaintiff had ample previous opportunity to bring the proposed
claim); Societe Liz, S.A. v. Charles of the Ritz Group, Ltd., 118
F.R.D. 2, 4-5 (D.D.C. 1987) (denying leave to amend where
plaintiff had previous knowledge of the facts underlying its
proposed claims).

Abramson and the Wolpoff firm argue that LaPrade has amended
her complaint three times already and had multiple prior
opportunities to cure any deficiencies in her claims.  LaPrade
responds that her first amendment was made as a matter of course
and that her subsequent amendments were submitted to comply with
Abramson's counsel's request to clarify the factual allegations.

It has been clear since LaPrade filed her original complaint
that she believes that May Co. created a false debt in her name
and that Abramson and the Wolpoff firm engaged in illegal
activity to collect that false debt.  (Compl. ¶¶ 16-22, 64.)
Further, in amending her complaint three times, LaPrade had ample
opportunity to include her proposed claims, but simply did not.
Hence, LaPrade has repeatedly failed to cure deficiencies by
amendments previously allowed.

C.   Prejudice

A motion to amend may be denied as prejudicial where a
defendant would have to conduct additional discovery and a
plaintiff has filed an untimely motion to amend without

-14-

demonstrating a good reason for the delay.  <u>Hollinger-Haye v.</u>
<u>Harrison Western/Franki-Denys</u>, 130 F.R.D. 1, 2 (D.D.C. 1990)
(denying leave to amend as prejudicial to defendants because the
proposed counts were based on facts known to the plaintiff prior
to the completion of discovery and the plaintiff demonstrated no
good reason for delay in filing the motion to amend).

        Abramson and the Wolfpoff firm argue that discovery is
completed and that allowing LaPrade to amend her complaint a
fourth time will necessitate further discovery and expense.
Although May Co. is not named in any of the proposed claims, it
argues that it, too, will be forced to engage in additional
discovery.  LaPrade appears to respond that because defendants
have not produced proof of the disputed debt, and because such
proof is key to any defense to the proposed claims, she will be
prejudiced if she is not allowed to assert these new claims.

        Granting LaPrade's motion would likely require Abramson and
the Wolfoff firm to prepare more responsive pleadings and engage
in additional discovery concerning the new claims.  LaPrade has
provided no good explanation for delaying her proposal to amend
far beyond the amendment deadline in the scheduling order, and
has not shown how defendants would not be prejudiced by the
amendments.

        Allowing a fourth amended complaint would result in
prejudice to Abramson and the Wolpoff firm which is not balanced

-15-

by any reasonable excuse for LaPrade seeking to amend long after
the amendment deadline had passed.  LaPrade's motion is unduly
delayed, and she failed to cure her pleading deficiencies in
three prior amendments.  Her motion has been denied.

II.  MOTION TO RECONSIDER

LaPrade moves for reconsideration of that part of the
June 20, 1997 Order which dismissed Count Sixteen of the first
amended complaint alleging that Abramson and the Wolpoff firm
defamed her in violation of D.C. Code § 28-3814(c).  That claim
alleged that submissions made by defendants to the D.C. Bar
Counsel as part of their grievance against Teppler, which
included five pages regarding the credit dispute, were
defamatory.  The claim was dismissed because D.C. Bar Rule XI
§ 19(a), providing that "[c]omplaints submitted to the Board or
Bar Counsel shall be absolutely privileged, and no claim or
action predicated thereon may be instituted or maintained,"
precludes LaPrade's defamation claim here.  See Slip. Op. at 8,
June 20, 1997 (applying D.C. Bar Rule XI § 19(a) (1990) and
citing Weaver v. Grafio, 595 A.2d 983, 987 (D.C. 1991)).

A court should not grant a motion for reconsideration unless
the moving party shows new facts or clear errors of law that
compel a change to its prior ruling.  Nat'l Ctr. for Mfr'g
Sciences v. Dep't of Defense, 199 F.3d 507, 511 (D.C. Cir. 2000).
A motion to reconsider that merely rehashes previous arguments

-16-

will be denied.  <u>First Am. Corp. v. Al-Hahyan</u>, 948 F. Supp. 1107,
1116 (D.D.C. 1996); <u>Mittleman v. United States Dep't of the</u>
<u>Treasury</u>, 919 F. Supp. 461, 470 (D.D.C. 1995).  A motion to
reconsider is also not a vehicle for bringing before a court
theories or arguments that were not earlier advanced.  <u>Graves v.</u>
<u>United States</u>, 967 F. Supp. 572, 573 (D.D.C. 1997).

LaPrade seeks reconsideration, relying on various Supreme
Court and D.C. Circuit decisions to argue that the republication
of defamatory material is not absolutely privileged under D.C.
Bar Rule XI 19(a), and that the republication was foreseeable,
making defendants -- as the original authors of the information
submitted to the D.C. Bar Counsel -- liable under D.C. Code § 28-
3814(c).  Defendants oppose the motion, arguing that the sole
source of the information published was the public record of the
D.C. Bar Counsel, and that under the D.C. Bar Rules, no action
can be predicated upon information in the public record of the
D.C. Bar Counsel.  Defendants also argue that the cases on which
LaPrade relies do not support her legal conclusion.

LaPrade essentially argues that her defamation claim is not
precluded because the privilege under D.C. Bar Rule XI § 19(a) is
not absolute and an action based on a grievance before the Bar
Counsel may be maintained.  To a great extent, this argument
merely rehashes arguments concerning the extent of immunity
provided by Rule XI § 19(a) that were already considered and

-17-

rejected.  To a very limited extent, LaPrade's argument advances

new theories or arguments that were not presented to the court

before.  Neither type of argument is availing on a motion for

reconsideration.  Al-Hahyan, 948 F. Supp. at 1116; Graves v.

United States, 967 F. Supp. at 573.  Because LaPrade attempts to

reargue an issue of law previously decided without error and

attempts inappropriately to introduce a new legal theory, her

motion has been denied.

III. SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure governs

motions for summary judgment.

> Summary judgment is appropriate when evidence on file
> shows "that there is no genuine issue as to any
> material fact and that the moving party is entitled to
> a judgment as a matter of law."  Fed. R. Civ. P. 56(c).
> Not all alleged factual disputes represent genuine
> issues of material fact which may only be resolved by a
> jury.  "Material facts are those 'that might affect the
> outcome of the suit under governing law,' and a genuine
> dispute about material facts exists 'if the evidence is
> such that a reasonable jury could return a verdict for
> the nonmoving party.'"  Farmland Indus., Inc. v. Grain
> Board of Iraq, 904 F.2d 732, 735-36 (D.C. Cir. 1990)
> (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242
> . . . (1986)).

America's Cmty. Bankers v. FDIC, 200 F.3d 822, 831 (D.C. Cir.

2000).  On a motion for summary judgment, a

> court's function is not to try disputed issues of fact,
> but only to ascertain whether such an issue is present,
> and any doubt on that score is to be resolved against
> the movant.  Since it is he who bears the onus of
> establishing his entitlement to summary judgment, his
> opponent enjoys the benefit of all favorable inferences
> from the evidence proffered; moreover, facts asserted

-18-

> by the non-movant, if adequately buttressed by
> evidentiary material, are to be taken as true.

Abraham v. Graphics Arts Int'l Union, 660 F.2d 811, 814 (D.C.

Cir. 1981) (footnotes omitted).

    A.   Laprade's motion for partial summary judgment

    LaPrade has moved under Rule 56 for what she calls partial

summary judgment.  She has clarified the purpose of her motion as

"seeking judgment on one simple issue:  the existence of a valid

and unpaid debt.  . . .  Plaintiff is not now seeking summary

judgment on any existing Count, or on any prospective Count for

which reconsideration or leave to amend has been sought."  (Pl.'s

Reply in Support of Pl.'s Motion for Summ. J., Recons., and Leave

to Amend at 3.)  Rather, she seeks a ruling that no valid unpaid

debt exists based on two alternative theories:  (1) defendants

have offered no proof of such a debt; or (2) that any debt is

time barred under District of Columbia's statute of limitations.

Defendants counter that they have indeed submitted evidence of

LaPrade's debt and that the statute of limitations does not bar

collection actions that do not consist of actual litigation.

    Rule 56 does not contemplate a motion for partial summary

judgment of the sort LaPrade has filed.  Judgment may not be

entered as to a fact or an element of a claim.  Capitol Records,

Inc. v. Progress Record Distrib., Inc., 106 F.R.D. 25, 28 (N.D.

Ill. 1985) (citing Biggins v. Oltmer Iron Works, 154 F.2d 214,

216 (7th Cir. 1946), and other cases).  Although Rule 56(d)

-19-

contemplates an "order specifying the facts that appear without substantial controversy," Fed. R. Civ. P. 56(d), "[t]here is no such thing as an independent motion under Rule 56(d)." Arado v. Gen. Fire Extinguisher Corp., 626 F. Supp. 506, 509 (N.D. Ill. 1985); see also Commodity Futures Trading Comm'n v. Clothier, Civ. A. No. 92-1062-B, 1992 WL 123675, at *2 (D. Kan. May 29, 1992) (citing authorities).  "The procedure described in subdivision (d) is designed to be ancillary to a motion for summary judgment.  . . .  Rule 56(d) does not authorize the entry of a judgment on part of a claim or the granting of partial relief."  10B Charles Alan Wright et al., Fed. Practice & Procedure § 2737, at 316 (2d ed. 1998).  Rather, Rule 56(d) authorizes an "order specifying uncontroverted facts."  Fed. R. Civ. P. 56(d).

Nevertheless, the facts here entitle LaPrade to neither summary judgment nor an order that no valid debt exists.  LaPrade expressly has not attempted to meet the summary judgment standard for any claim, and in fact, she has not done so.  In addition, the record evidence on the existence of a valid debt is conflicting.  May Co. has submitted the Woodies documents and the the Russell affidavit, which show that a debt existed from at least 1989 through at least 1992.  LaPrade has submitted documents and her own declaration which show that her Woodies account had a zero balance as of January 9, 1992, and no unpaid

-20-

debt after that point.  (<u>See</u> Pl.'s Mem. Supp. Mot. Summ. J. &
Opp'n May Co.'s Mot. Summ. J., Declaration of Rona F. LaPrade,
Mar. 23, 1998 & Exs. A, B.)  In light of the inconclusive and
conflicting evidence on this material fact, no relief for LaPrade
under Rule 56 is warranted.

     B.   <u>May Co.'s motion for summary judgment</u>

        1.   Count I:  15 U.S.C. § 1637(a)(7)

     Count I of LaPrade's third amended complaint alleges that
May Co. violated 15 U.S.C. § 1637(a)(7) by failing to transmit
consumer protection statements to her despite reporting her
allegedly delinquent debt to others.  Section 1637(a)(7) requires
that

> [b]efore opening any account under an open end consumer
> credit plan, the creditor shall disclose to the person
> to whom credit is to be extended . . . [a] statement,
> in a form prescribed by regulation of the [Federal
> Reserve] Board[,] of protection provided by sections
> 1666 and 1666i of this title to an obligor and the
> creditor's responsibilities under sections 1666a and
> 1666i of this title.

     May Co. moves for summary judgment, arguing that
§ 1637(a)(7) does not apply to it because May Co. was the
disputed debt's assignee, not the originator, and therefore May
Co. was not a "creditor" to LaPrade for an "open end credit
plan."  More specifically, May Co. argues that only the person to
whom the debt was initially payable is a creditor under the TILA.[2]

_____

    [2]  May Co. acknowledges it was assigned the debt and that
the TILA provides assignee liability, but only under

-21-

May Co. also argues that it did not establish an "open end credit plan" for LaPrade as that term is defined in the TILA and used in § 1637.  May Co. asserts that it did not open an account for LaPrade, but acquired the account with the Woodies purchase, that it never intended for LaPrade to charge purchases to that account, and that it never added any finance charge to what it believed was LaPrade's debt.

LaPrade, relying on Saunders v. Ameritrust of Cincinnati, 587 F. Supp. 896 (S.D. Ohio 1984), counters that May Co. created a false debt and that the creation of a false debt gives her a cause of action under § 1637.  Saunders, however, is inapposite. Saunders addressed a violation of § 1637(b), while LaPrade alleges a violation of § 1637(a)(7), which imposes different obligations a creditor.  Unlike Saunders, this case presents the threshold question of whether the creation of a false debt by an entity with no prior credit relationship to the alleged obligor, where the debt is assigned to collections, falls under the provisions of § 1637(a)(7).[3]  Stated differently, the question is

---

circumstances which are not present here.

[3]  None of these critical issues was before the court in Saunders.  In Saunders, the defendant had issued a VISA card to the plaintiff, the account became delinquent, the defendant's collections attorneys later told the plaintiff that his account had been paid in full, but the defendant continued to report a delinquent debt to the credit bureau.  587 F. Supp. at 897. There was no dispute that defendant was a "creditor" who had opened an "open end credit plan" account for plaintiff, as those

-22-

whether, assuming May Co. created a false debt, doing so made it LaPrade's "creditor" of an "open end consumer credit plan," within the meaning of the TILA.

A "creditor" under the TILA is

a person who both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of the indebtedness or, if there is not such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f).

May Co. arguably could be a creditor to LaPrade under the TILA.  May Co. admits that it "does regularly extend credit to other consumers."  (May Co.'s Mem. Supp. Mot. Summ. J. at 14.) If May Co. created the debt, then May Co. could be the "person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of the indebtedness[.]"  § 1602(f)(2).  If LaPrade could prove that May Co. falsely created the debt, then May Co. in theory would be LaPrade's "creditor" under the TILA.

However, a creditor who creates a false debt and assigns that debt to collections does not extend credit to the alleged

---

terms are defined by TILA.  Id.  The court held that 15 U.S.C. §§ 1637(b), 1666(b)(6) and 1666a together "create a cause of action against a creditor who reports to a credit bureau that an account is delinquent after the debtor has paid the account in full."  Id. at 897.

-23-

obligor under an "open end credit plan," which is defined by the

TILA as

> a plan under which the creditor reasonably contemplates
> repeated transactions, which prescribes the terms of
> such transactions, and which provides for a finance
> charge which may be computed from time to time on the
> outstanding unpaid balance.

15 U.S.C. § 1602(i).

> "Open-end credit" means consumer credit extended
> by a creditor under a plan in which:
>
> > (i) The creditor reasonably contemplates
> > repeated transactions;
> >
> > (ii) The creditor may impose a finance charge
> > from time to time on an outstanding unpaid
> > balance; and
> >
> > (iii) The amount of credit that may be
> > extended to the consumer during the term of
> > the plan (up to any limit set by the
> > creditor) is generally made available to the
> > extent that any outstanding balance is
> > repaid.

12 C.F.R. § 226.2(a)(20). "Open-end credit is consumer credit

that is extended under a plan and meets all three criteria set

forth in the definition." 12 C.F.R. § 226, Supp. 1, 2(a)(20)(1).

The criterion of reasonably contemplated repeated

transactions of 15 U.S.C. § 1602(a)(20)(i) requires that "the

credit plan must be usable from time to time and the creditor

must legitimately expect that there will be repeat business

rather than a one-time credit extension." 12 C.F.R. § 226,

Supp. 1, 2(a)(20)(3). Here, even if May Co. did create a false

debt, there is no evidence that the account was "usable from time

to time" by LaPrade or that May Co. did "legitimately expect that
there will be repeat business."  For example, the record does not
reflect that May Co. issued LaPrade a credit card or took any
other measure to allow her to initiate a credit transaction.
Thus, the facts in this case do not meet the first criterion of
an open end consumer credit plan.

The third criterion of an open end consumer credit plan is
that the amount of credit "is generally made available to the
extent that any outstanding balance is repaid," 15 U.S.C.
§ 1602(a)(20)(iii), that is, "available credit is generally
replenished as earlier advances are repaid."  12 C.F.R. § 226,
Supp. 1, 2(a)(20)(5).  "A line of credit is self-replenishing
. . . as long as during the plan's existence the consumer may use
the line, repay, and reuse the credit."  Id.  There is no
evidence that LaPrade could either "make use of the line" or
"reuse" the credit May Co. may have extended if it created a
false debt.

In sum, even if May Co. created and charged a false debt to
an account in LaPrade's name, no facts demonstrate that May Co.
did "reasonably contemplate repeated transactions" by LaPrade
under the disputed account.  That account, then, did not
constitute "reusable" credit and May Co. did not extend an "open
end credit plan" to LaPrade as those terms are defined the TILA
and its implementing regulations.  There is no genuine issue of

any fact material to LaPrade's claim under § 1637(a)(7) and May
Co. is entitled to judgment as a matter of law on Count I.

2.   Counts II, III, and IV:  15 U.S.C. § 1666(a)

Counts II, III and IV of LaPrade's third amended complaint
allege that May Co. violated 15 U.S.C. § 1666(a).  That provision
states that if a creditor, "after having transmitted to an
obligor a statement of the obligor's account in connection with
an extension of consumer credit," receives from the obligor
within 60 days a written notice disputing the statement, the
creditor is required, within 90 days, to either

> (i) make appropriate corrections in the account of the
> obligor, . . . and transmit to the obligor a
> notification of such corrections and the creditor's
> explanation of any change[; or] . . .
> (ii) send a written explanation or clarification to the
> obligor, after having conducted an investigation,
> setting forth to the extent applicable the reasons why
> the creditor believes the account of the obligor was
> correctly shown in the statement and, upon request of
> the obligor, provide copies of documentary evidence of
> the obligor's indebtedness.

15 U.S.C. §§ 1666(a)(3)(B)(i)-(ii).

May Co. moves for summary judgment on grounds that § 1666(a)
is not applicable to LaPrade's allegations or, alternatively,
that it fulfilled its statutory responsibilities under that
section while LaPrade failed to fulfill her responsibilities.
LaPrade disputes each of these points.  Because the provisions of
§ 1666(a) apply only where the creditor has "transmitted to an
obligor a statement of the obligor's account in connection with

-26-

an extension of consumer credit," and because May Co. did not

extend consumer credit to LaPrade or transmit a statement to her

in connection with an extension of consumer credit, the

provisions of § 1666(a) do not apply.  There is no genuine issue

of fact material to LaPrade's claim under § 1666(a), and May Co.

is entitled to judgment as a matter of law on Counts II through

IV.

    3.   Count V:  15 U.S.C. § 1666a(a)

    Count V of LaPrade's third amended complaint alleges that

May Co. violated 15 U.S.C. § 1666a(a), which provides that

> [a]fter receiving a notice from an obligor as provided
> in section 1666(a) of this title, a creditor . . . may
> not directly or indirectly threaten to report to any
> person adversely on the obligor's credit rating or
> credit standing because of the obligor's failure to pay
> the amount indicated by the obligor under section
> 1666(a)(2) of this title, and such amount may not be
> reported as delinquent to any third party until the
> creditor has met the requirements of section 1666 of
> this title and has allowed the obligor the same number
> of days (not less than ten) thereafter to make payment
> as is provided under the credit agreement with the
> obligor for the payment of undisputed amounts.

    May Co. moves for summary judgment on grounds that it is not

LaPrade's creditor, that LaPrade did not send a timely objection

to it under § 1666(a), and that within ten days of eventually

being contacted by LaPrade, it removed the derogatory information

from LaPrade's credit report.  LaPrade disputes that May Co. is

not her creditor, and argues that under Saunders, a creditor who

creates an erroneous debt under an open end consumer credit plan

-27-

is barred from reporting derogatory information to credit

bureaus, even in the absence of an objection by the consumer.

As is discussed above, the account in dispute was not an

open end credit plan under § 1637, and did not involve an

extension of consumer credit as is required to trigger the

protections of § 1666(a).  LaPrade, then, is not entitled to

invoke the additional protections of § 1666a(a), which apply only

when a consumer is entitled to file an objection under § 1666(a).

With no existing genuine issue of fact material to LaPrade's

claim under section 1666a(a), May Co. is entitled to judgment as

a matter of law.

      4.   Count VIII:  Defamation

Count VIII of LaPrade's third amended complaint alleges that

by reporting false information regarding her credit history to

credit bureaus, May Co. defamed LaPrade under D.C. law.  May Co.

moves for summary judgment on the grounds that it is immune from

state defamation claims by virtue of 15 U.S.C. § 1681h(e), which

provides that, with certain exceptions not applicable here,

> no consumer may bring any action or proceeding in the
> nature of defamation . . . with respect to the
> reporting of information against any consumer reporting
> agency, any user of information, or any person who
> furnishes information to a consumer reporting agency
> . . . except as to false information furnished with
> malice or willful intent to injure such consumer.

May Co. disputes that it acted with malice or willful intent to

injure LaPrade when it reported LaPrade's alleged debt to the

-28-

credit bureaus.  In support, May Co. argues that there is no
proof that it knew the debt was false, and that its act of
promptly deleting the disputed debt when LaPrade objected
indicates a lack of malice or willful intent to injure.  May Co.
also argues that its role as assignee rather than creator of the
disputed debt further demonstrates its lack of malice or willful
intent, and points to the Woodies documents and the Russell
affidavit which show an outstanding balance of $371.67 in
collections as of January 15, 1992 on LaPrade's account.
Finally, May Co. argues that LaPrade has not demonstrated that
she suffered any damages as a result of defamation.

    LaPrade contends that May Co. acted with malice or willful
intent to injure and therefore is not immune under § 1681h(e).
She argues that the evidence shows that May Co. falsely created
the debt.  She cites to a document from Woodies' Credit Division
shows that her account was paid in full as of November 1991, and
to a document from Woodies' Corporate Credit Department that
states that as of January 9, 1992, the account had a zero
balance, that all derogatory information relating to LaPrade's
account had been removed from Woodies' records, and that Woodies
had asked several credit bureaus to remove any negative
information related to that account.  She also asserts that May
Co. reported the existence of a false debt with full knowledge
that it was false, and has continued to maintain that the false

debt was valid.  Finally, LaPrade contends that she suffered
actual damage when Chevy Chase Bank revoked her $4,500 credit
line upon examination of her credit reports.  She supports her
contention with a June 25, 1996 letter from Chevy Chase Bank
stating that LaPrade's credit line was being withdrawn because,
in part, her credit history showed she had not paid other
accounts as agreed.  (Pl.'s Sealed Mem. Opp'n to Wolpoff Firm's
Mot. Summ. J., Ex. R, at 1.)

Giving LaPrade the benefit of all favorable inferences from
the evidence proffered, <u>Abraham</u>, 660 F.2d at 814, a reasonable
trier of fact could conclude that LaPrade owed no debt to
Woodies, and that May Co. created and then knowingly reported a
false debt to credit bureaus with malice or willful intent to
injure LaPrade, causing damage to LaPrade.  A genuine issue
remains as to whether May Co. acted with malice or willful intent
to injure LaPrade, and therefore whether May Co. is immune from a
state defamation claim under § 1861h(e).  May Co.'s motion for
summary judgment on Count VIII, then, has been denied.

<u>CONCLUSION</u>

LaPrade's motion to amend her complaint has been denied
because it was unduly delayed, she failed to cure the complaint's
deficiencies in amendments previously allowed, and granting her
motion would prejudice Abramson and the Wolpoff firm.  LaPrade's
motion to reconsider has been denied because it rehashes an

-30-

argument previously rejected and impermissibly attempts to advance a new legal theory not previously argued.  LaPrade's motion for partial summary judgment has been denied since existing genuine issues of material fact entitle LaPrade to no relief under Rule 56.

May Co.'s motion for summary judgment has been granted in part and denied in part.  The motion has been granted as to Count I because 15 U.S.C. § 1637 does not apply to the facts of this case.  The motion has been granted as to Counts II, III, and IV because 15 U.S.C. § 1666(a) does not apply to the facts of this case.  The motion has been granted as to Count V because 15 U.S.C. § 1666a(a) does not apply to the facts of this case.  The motion has been denied as to Count VIII because LaPrade's defamation claim is not barred by § 1681h(e) if May Co. acted with malice or willful intent to injure, and genuine issues of material fact exist as to the nature of May Co.'s conduct.

SIGNED this 29th day of November, 2006.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge